O

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| ex rel. PATRICIA ROCHA AND | § | |
| ROSE MARIE DICKEY, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-97-2699 |
| | § | |
| AMERICAN TRANSITIONAL | § | |
| HOSPITALS, INC. and | § | |
| BEVERLY ENTERPRISES, INC., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

Pending is Defendants American Transitional Hospitals, Inc. and Beverly Enterprises, Inc.'s Motion to Dismiss Relators' Second Amended Original Complaint (Document No. 83) and the Joint Motion for Continuance of Trial Setting and Deadlines (Document No. 86). After having carefully reviewed the motion, supporting memorandum of law, response, reply, and applicable law, the Court concludes as follows:

I.  Background

Plaintiffs-Relators Patricia Rocha and Rose Marie Dickey (collectively "Relators"), who are nurses formerly employed by Defendants American Transitional Hospitals, Inc. ("ATH"), and

Beverly Enterprises, Inc. ("Beverly") (collectively "Defendants"), file this qui tam action alleging that Defendants violated the False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq., by making false certifications of compliance with Medicare regulations concerning the maintenance of a Level IV emergency room.[1]  Document No. 50 at 5-6; Document No. 88 ¶ 21.  The federal government has declined to intervene and prosecute this suit on behalf of the United States. (Document No. 21).

Beverly, one of the largest owners of nursing homes in the United States, at one time owned ATH, which operated three facilities in Houston, Texas.  Relators allege that from 1995 to 1997, Defendants fraudulently obtained their certification as a Medicare provider by falsely representing that they maintained a Level IV Emergency Room, in violation of 25 Texas Administrative Code §§ 133.41(e)(2) and 133.163(f)(B)(v).  Document No. 50 ¶ 13-15.  Relators allege that the room that Defendants falsely represented as an emergency room was never staffed or used by patients, but instead was used for storage.  Id. ¶ 16-17.

---

[1] In their response to Defendants' Motion to Dismiss, Relators concede they are pursuing only their certification claim and they therefore did not defend any of their remaining claims that are challenged by Defendants' motion.  Document No. 88 ¶ 21. Accordingly, the remaining claims in Relators' Second Amended Original Complaint--"Billing for services that were not rendered," "Supplies and medications," "Fraudulent billing for medical procedures," "Fraudulent equipment billing," "Failure to provide adequate care," "Billing for equipment that was not actually purchased," "Records secreted from Medicare auditors," and a retaliation claim--are dismissed with prejudice. (Document No. 50).

2

According to Relators, one Relator was ordered to rent a storage unit and truck so that "[i]n the days, hours and minutes before an audit or inspection at the facility during each of the three subject years, boxes and other materials that were stored in the sham emergency room would be moved." Id. ¶ 16-18. Relators further allege that "[t]his shell game was played at the direction of the Chief Executive Officer of ATH." Id. ¶ 18. As such, Relators claim that "any and all claims presented to the United States Government for Medicare were done so when Defendants knew they were not meeting the requirements for certification, but fraudulently withheld that information from the United States." Id. ¶ 19.

Defendants move to dismiss with prejudice Relators' Second Amended Original Complaint (the "Complaint") for failure to meet the requirements of Federal Rules of Civil Procedure 9(b) and 12(b)(6). Document No. 89 at 7. Specifically, Defendants argue that the Complaint (1) misstates the applicable law that was in effect between 1995 and 1997; (2) fails to identify and plead any false certifications by Defendants that would constitute an FCA claim; and (3) incorrectly maintains that an alleged violation of hospital licensing rules renders a Medicare claim "false" under the FCA. Id. at 2-6.

## II.  <u>Standard of Review</u>

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint.  *See* <u>Lowrey v. Texas A & M Univ. Sys.</u>, 117 F.3d 242, 247 (5th Cir. 1997).  Dismissal of a claim is improper "unless it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." <u>Leffall v. Dallas Indep. Sch. Dist</u>., 28 F.3d 521, 524 (5th Cir. 1994).  "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." <u>Fernandez-Montes v. Allied Pilots Ass'n</u>, 987 F.2d 278, 284 (5th Cir. 1993).

"The plaintiff need not set forth all the facts upon which the claim is based; rather, a short and plain statement is sufficient if it gives the defendant fair notice of what the claim is and the grounds upon which it rests." <u>Mann v. Adams Realty Co.</u>, 556 F.2d 288, 293 (5th Cir. 1977).  Therefore, in challenging the sufficiency of the complaint under Rule 12(b)(6), the defendant bears the burden of proving that "no relief could be granted under any set of facts that could be proved consistent with the

4

allegations" in the complaint.  <u>Hishon v. King & Spalding</u>, 104 S. Ct. 2229, 2232 (1984).

"The complaint in a False Claims Act suit must fulfill the requirements of Rule 9(b)."  <u>United States ex rel. Russell v. Epic Healthcare Mgmt. Group</u>, 193 F.3d 304, 308 (5th Cir. 1999); <u>United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.</u>, 125 F.3d 899, 903 (5th Cir. 1997).  Pursuant to Rule 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  FED. R. CIV. P. 9(b).  To satisfy Rule 9(b), a plaintiff must plead the time, place, and contents of the allegedly false representations, the identity of the speaker, and what the speaker obtained by making the representation--otherwise referred to as the "who, what, when, where, and how" of the alleged fraud.  <u>Russell</u>, 193 F.3d at 308; <u>Thompson</u>, 125 F.3d at 903.  These requirements are not relaxed merely because the suit is brought under the False Claims Act. <u>Russell</u>, 193 F.3d at 308-09.

## III.  <u>Discussion</u>

The False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, prohibits the submission of false or fraudulent claims to the federal government.  The FCA permits private persons to file a qui tam action against, and recover damages on behalf of the United States from, any person who:

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; . . . or

(7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government . . .

31 U.S.C. § 3729(a).

Not all fraudulent conduct gives rise to liability under the FCA.  "[T]he statute attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment.'"  <u>United States ex rel. Graves v. ITT Educ. Servs., Inc.</u>, 284 F. Supp. 2d 487, 495 (S.D. Tex. 2003) (Rosenthal, J.) (quoting <u>United States ex rel. Rivera v. Perez</u>, 55 F.3d 703, 709 (1st Cir. 1995)); <i>see also</i> <u>United States ex rel. Russell v. Epic Healthcare Mgmt. Group</u>, 193 F.3d 304, 308 (5th Cir. 1999)("The conduct to which liability attaches in a False Claim Act suit consists in part of false statements or claims for payment presented to the government").[2]  The Fifth Circuit has found that a FCA violation can occur where a defendant, in order to induce

---

[2] The FCA defines a "claim" as "any request or demand, whether under a contract or otherwise, for money or property." 31 U.S.C. § 3729(c).  "It is only those claims for money or property to which a defendant is not entitled that are 'false' for purposes of the False Claims Act." <u>United States v. Southland Mgmt. Corp.</u>, 326 F.3d 669, 674-75 (5th Cir. 2003) (en banc) (citation omitted).

payment of a government benefit, falsely certifies compliance with
certain conditions that are required as a prerequisite for
government payments or benefits. *See, e.g.*, <u>United States ex rel.
Thompson v. Columbia/HCA Healthcare Corp.</u>, 125 F.3d 899, 902 (5th
Cir. 1997).  Under a false certification theory of liability, a
relator must, at a minimum, identify an actual false certification
of compliance with a federal statute, regulation or contractual
term that is a prerequisite to obtaining payment, and the false
certification of compliance must have been submitted to the
government. *See* <u>id.</u>; *see also* <u>United States v. Southland Mgmt.
Corp.</u>, 288 F.3d 665, 679 (5th Cir. 2002), *reh'g en banc*, 326 F.3d
669 (5th Cir. 2003); <u>United States ex rel. Bowan v. Educ. Am.,
Inc.</u>, 116 Fed. Appx. 531, 531-32 (5th Cir. Nov. 30, 2004)
(unpublished); <u>Graves</u>, 284 F. Supp. 2d at 497.  A violation of the
underlying statute or regulation alone does not create a false
certification cause of action under the FCA; instead, "liability
arises only if the defendant has made a false certification of
compliance with the statute or regulation, when payment is
conditioned on that certification." <u>Graves</u>, 284 F. Supp. 2d at
497; *see also* <u>United States ex rel. Willard v. Humana Health Plan
of Tex. Inc.</u>, 336 F.3d 375, 381 (5th Cir. 2003).  "A general
statement of adherence to all regulations or statutes governing
participation in a program through which federal funds are received

7

is insufficient as a basis of False Claims Act liability." <u>Graves</u>,
284 F. Supp. 2d at 501.

Relators first argue that false certification occurred because
Defendants in 1995, 1996, and 1997 falsely certified compliance
with Sections 133.41 and 133.163 of the Texas Administrative Code--
two hospital licensing regulations that require hospitals to
maintain emergency rooms that meet certain criteria. *See* Document
No. 50 ¶ 15; Document No. 88 ¶¶ 22-24 (citing 25 TEX. ADMIN. CODE
§§ 133.41(e)(2) and 133.163(f)(B)(v)).  However, as Relators' own
attached exhibit demonstrates, Document No. 88 ex. D, these
hospital licensing regulations did not become effective until
August, 1998. *See* 25 TEX. ADMIN. CODE §§ 133.41(e)(2),
133.163(f)(B)(v).  Hence, Defendants could not have made a false
certification of compliance with regulations that were not yet
effective.  Furthermore, the regulations in effect between 1995 and
1997, as well as the 1998 hospital licensing rules cited by
Relators, imposed no requirement that hospitals such as Defendants
maintain a Level IV emergency room--as a condition for government
payment or otherwise. *See* <u>id.</u>; *see also* 25 TEX. ADMIN. CODE
§ 133.21(a) (incorporating regulations in effect at the time of the
alleged conduct).[3]

_____

[3] Under the 1998 hospital licensing regulations, special
hospitals like Defendants were required only to maintain a room to
handle emergencies, "located anywhere in the hospital," of a
certain dimension with storage space. *See* 25 TEX. ADMIN. CODE
§§ 133.163(f)(1)(A)(ii) and 133.163(f)(1)(B)(v).  Relators direct
the Court to no authority requiring a Level IV Emergency Room to be

Elsewhere in the Second Amended Original Complaint, Relators fail to allege and describe with particularity the core element of a certification claim under the FCA--that Defendants made an actual, false certification of compliance with a federal statute, regulation, or contractual term that was a prerequisite to obtaining payment from the government. *See* <u>Thompson</u>, 125 F.3d at 902; <u>Graves</u>, 284 F. Supp. 2d at 497.  Relators have not alleged an actual false certification of compliance made by Defendants to the federal government, nor have they described a document or representation by Defendants certifying to the government that they maintained a Level IV emergency room--much less that such a certification of compliance, if given, was a condition for payment by the government.  Instead of identifying a single, specific false claim or false certification of compliance submitted to the government, Relators allege generally that "any and all claims presented to the United States Government for Medicare were done so when Defendants knew they were not meeting the requirements for certification."  Document No. 50 ¶ 19.  This broad, conclusory allegation falls short of the requirement that a claim of false certification of compliance be pled with particularity, identifying facts such as what the certification of compliance stated, who submitted the certification, when and where it was submitted to the

_____

maintained as a condition for government payment or "[a]s part of the certification process" to operate as a Medicare provider. Document No. 50 ¶ 14.

9

government, and how the actual certification was false.  *See* Thompson, 125 F.3d at 903; *see also* Willard, 336 F.3d at 384.

Furthermore, to the extent that Relators have attempted to assert an "implied false certification" theory of liability, the claim also fails.  First, the Fifth Circuit has not expressly recognized an implied false certification theory of liability under the FCA.  *See* Willard, 336 F.3d at 381.[4]  Additionally, under either an implied or express certification theory, Relators must allege with particularity an actual certification to the government that was a prerequisite to obtaining a government benefit.  *See* United States ex rel. Gay v. Lincoln Technical Inst., Inc., No. Civ. A. 301CV505K, 2003 WL 22474586, at *4 (N.D. Tex. Sept. 3, 2003) ("[U]nder either implied or express certification theories, the certification must be a prerequisite to receive the government benefit in order to be legally false. . . .  Relators present nothing establishing that [Defendant] made a false certification of compliance, either implied or express, as a condition of

---

[4] Under the implied false certification approach, "when an underlying regulation expressly prohibits payment upon non-compliance with its terms, the submission of a claim implicitly certifies compliance with that regulation."  U.S. ex rel. Quinn v. Omnicare Inc., 382 F.3d 432, 441-42 (3d Cir. 2004).  In an FCA action where relators alleged that physicians submitted fraudulent Medicare claims to the government, the Second Circuit found that a broad reading of the implied certification approach "does not fit comfortably into the health care context."  Mikes v. Straus, 274 F.3d 687, 699 (2d Cir. 2001).

payment").[5]  Relators have failed to allege or identify any such certifications made by Defendants in this case.

Finally, Relators make the sweeping allegation that any instance of non-compliance with state hospital licensing standards would render the Defendant hospitals "ineligible to receive Medicare payments" and thus would result in the submission of thousands of false claims under the FCA.  Document No. 88 ¶¶ 4, 6; *see also* Document No. 50 ¶¶ 13-14, 19.  This argument is contrary to the FCA and the controlling Medicare regulations.  First, under the FCA, a regulatory violation, alone, does not create a false certification cause of action under the FCA.  <u>Graves</u>, 284 F. Supp. 2d at 497.  Instead, a relator must plead and identify an actual false claim or certification of compliance submitted to the government.  <u>Id.</u>

Additionally, an alleged violation of a state hospital licensing standard does not automatically render a defendant "ineligible to receive Medicare payments."  Relators argue that if

---

[5] The same requirement is clear from the implied certification cases from other Circuits cited by Relators in their Response. *See, e.g.,* <u>U.S. ex rel. Quinn v. Omnicare Inc.</u>, 382 F.3d 432, 443 (3d Cir. 2004) ("[Relator] did not provide the District Court with a single instance where [Defendant] submitted a [false] claim for payment . . . For that reason, [Relator]'s false certification claim fails"); <u>Mikes v. Straus</u>, 274 F.3d 687, 700 (2d Cir. 2001) ("Liability under the Act [for implied false certification] may properly be found therefore when a defendant submits a claim for reimbursement while knowing--as that term is defined by the Act, *see* 31 U.S.C. § 3729(b)--that payment expressly is precluded because of some noncompliance by the defendant").

Defendants are not in compliance with federal, state, or local regulations, they lack the "proper certifications as required by law" and any ensuing Medicare claims are rendered "false" under the FCA. *See* Document No. 88 ¶¶ 4, 6, 22. Relators base this argument on 42 C.F.R. § 482.11(b)(2), a general regulatory statement governing participation in Medicare, which provides that a hospital must be (1) licensed; or (2) "approved as meeting standards for licensing established by the agency of the State or locality responsible for licensing hospitals." 42 C.F.R. §§ 482.11(b)(1) and (2).

Relators distort the significance of this provision, which merely provides that, to participate in Medicare, hospitals must be licensed (or similarly approved) by the State. Relators do not allege that Defendants were not licensed by the State at all pertinent times. Moreover, the regulation does not provide that hospitals will be automatically divested of their licenses if they violate federal, state, or local rules and thereby become ineligible to receive Medicare payments. Furthermore, Relators direct the Court to no authority suggesting that if a hospital fails to meet a condition of participation in Medicare, the automatic result is that (1) the hospital is ineligible to receive Medicare payments, and (2) all claims thereby submitted by the hospital for Medicare payments are "false" under the FCA. Instead, under 42 C.F.R. § 488.28(c)(1), "[i]f it is determined . . . that

12

a provider is not in compliance with one or more of the standards,
it is granted a reasonable time to achieve compliance." In other
words, federal regulations contemplate that if a Medicare provider
is not in complete compliance with applicable rules and
regulations, the provider may continue participation in Medicare--
and presumably submit claims for payment--while the cited
deficiency is corrected. Furthermore, the FCA does not create
liability for every alleged regulatory violation. Instead, the FCA
requires that (1) a defendant makes a knowingly false certification
of compliance with a statute or regulation; and (2) the
certification is a prerequisite to payment. Graves, 284 F. Supp.
2d at 498 (citing Southland, 288 F.3d at 679); see also Thompson,
125 F.3d at 902; Bowan, 116 Fed. Appx. at 531-32. Relators have
not alleged that Defendants made certifications of compliance with
particular regulations on which payment was conditioned. Because
Relators have had multiple opportunities and several years to plead
a viable FCA claim, which they have failed to do, Relators' Second
Amended Original Complaint will be dismissed with prejudice.

## IV.   Order

For the foregoing reasons, it is

ORDERED that Defendants American Transitional Hospitals, Inc.
and Beverly Enterprises, Inc.'s Motion to Dismiss Relators' Second
Amended Original Complaint (Document No. 83) is GRANTED, and the

13

case is hereby DISMISSED with prejudice.   The Joint Motion for Continuance of Trial Setting and Deadlines (Document No. 86) is therefore DENIED as moot.

The Clerk shall notify all parties and provide them with a signed copy of this Order.

SIGNED at Houston, Texas, on this 14th day of December, 2005.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

14